IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MILDRED GARCÍA RAMÍREZ<br><br>Plaintiff<br><br>v.<br><br>ATLANTIC UNIVERSITY COLLEGE, INC.<br><br>Defendant | CIVIL NO. 15-<br><br>DISABILITY DISCRIMINATION; RETALIATION; WRONGFUL DISCHARGE; DAMAGES<br><br>TRIAL BY JURY DEMANDED |

## COMPLAINT

TO THE HONORABLE COURT:

COMES NOW Plaintiff, Mildred García Ramírez ("García"), through the undersigned attorneys, and very respectfully alleges, states and prays:

### I. NATURE OF THE ACTION AND JURISDICTION

1. This is an action seeking compensatory, double, liquidated and punitive damages and equitable and injunctive relief to seek redress for defendant's discrimination on the basis of disability and retaliation against García, pursuant to the Americans with Disabilities Act ("ADA"), the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. §§12101, *et seq.*; Puerto Rico Law No. 44 of July 2, 1985, as amended; the Puerto Rico Disabilities Act, Puerto Rico Law No. 53 of August 30, 1992, as amended; and Puerto Rico Law No. 115 of December 20, 1991; and Law No. 80 of May 30, 1976

2. This court has jurisdiction to entertain this action pursuant to 28 U.S.C. 1331 and 1343(4) and 42 U.S.C. §§12101, *et seq.* Its supplemental jurisdiction is also invoked pursuant to 28 U.S.C. § 1367(a) to hear the Commonwealth of Puerto Rico law claims because these are so related to the other claims as to which this court has original jurisdiction that they

1

form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1) and (2), as the defendant resides in Puerto Rico and all the discriminatory and retaliatory employment practices alleged were committed within the judicial district comprising the Commonwealth of Puerto Rico.

4. On January 20, 2015, García filed a timely charge of employment discrimination on the basis of disability and retaliation against defendant with the Anti-Discrimination Unit of the Department of Labor of Puerto Rico ("ADU").

5. The charge was thereafter referred to the Equal Employment Opportunity Commission ("EEOC").

6. The charge number with the ADU is uadau15-024ce and the charge number at the EEOC is 16H-2015-00230C.

7. On August 14, 2015, the EEOC issued its Notice of Dismissal and Right to Sue as to the charge.  *See*, Exhibit 1.

8. The instant complaint is being filed with ninety (90) days of García's receipt of the Dismissal and Notice of Right to Sue.

## II. THE PARTIES

9. García is of legal age, a citizen of the United States and a resident of San Juan, Puerto Rico.

10. At all relevant times, García was an "employee with a disability" under the provisions of the ADA and ADAAA, and is within the protected class under those statutes as well as under their Puerto Rico counterparts. In the alternative, defendant regarded García as disabled.

11. García is an employee under all of the federal and local statutes upon which she bases her requests for relief.

12. The defendant, Atlantic University College, Inc. ("AUC") is, and at all times hereinafter mentioned was, a corporation duly created under the Laws of and with its principal place of business in the Commonwealth of Puerto Rico.

13. AUC is a corporation registered with the Commonwealth of Puerto Rico Department of State.

14. At all times relevant herein, AUC has been García's employer.

15. AUC is a "person" and an "employer" within the meaning of all the legal provisions of federal and Puerto Rico law upon which García predicates her claims for relief.

16. AUC employs more than twenty (20) employees on a daily basis as the term is defined in 42 U.S.C. §12114.

17. AUC is an "employer" under Puerto Rico Law Nos. 44, 53, 80 and 115.

### III. THE FACTS

18. García repeats and incorporates by reference each and every preceding allegation as if fully set herein.

19. García began working for AUC as a part-time professor in 2007.

20. Then, in 2010, García became a full-time professor.

21. At all times relevant to this complaint, García received excellent work performance evaluations from AUC.

22. García was an excellent professor, as reflected not only by her evaluations but by the reviews submitted by her students.

23. At the beginning of the year 2014, García went to the offices of her physician, who informed her that she required right shoulder surgery due to a rupture of tendons in the rotator cuff.

24. García notified her impairment to AUC, as well as her need for right shoulder surgery.

25. Ángela Marrero ("Marrero"), Coordinator at AUC, requested that García delay her operation until the Holy Week break ("Semana Santa"), so that García would not be absent from any of her classes.

26. García agreed to Marrero's request and scheduled her surgery for April 11, 2014.

27. García's surgery took place on April 11, 2014.

28. However, the recovery process took longer than García's physicians had anticipated, and as a result, it was towards the end of April 2014 that García reintegrated herself to work.

29. Upon her return to work, García requested from AUC, as a reasonable accommodation, to be allowed to take days off from work in order to take physical therapy for her right shoulder.

30. These physical therapies were a mandatory component of her recovery process.

31. As part of her request for reasonable accommodation, García also requested that she be allowed to continue giving the Modern Art History course, but that she be relieved, during the May-August academic session, from teaching the following two courses: (1) Fundamentals of Art and Design and (2) Illustration Techniques.

32. The reason for García's reasonable accommodation request is that teaching these last two courses required that García use her right arm and shoulder in order to effectively teach the skills and techniques. This was contraindicated for her recovery.

33. As soon as García made her request for reasonable accommodation, AUC began to discriminate against García on account of her disability and to retaliate against her for having requested a reasonable accommodation.

34. Marrero reprimanded García for not having completed a series of tasks pertaining to AUC's accreditation process, despite the fact that Marrero knew that the reason why García had not yet concluded these tasks was because she had been out of work for several days recovering from her surgery and had only reintegrated herself at the end of April.

35. Moreover, AUC's Dean, Ivette Carbonell ("Carbonell"), rejected García's request to be temporarily relieved from teaching the courses of Fundamentals of Art and Design and Illustration Techniques.  Instead, AUC forced García to teach these two courses during the May-August academic session.

36. Moreover, when García was paid her salary corresponding to the months of June and July 2014, AUC deducted $100.00 from each of the payments.

37. AUC claimed that the reason for deducting from García's salary for those two months was because of the days which García had had to take off from work for her therapies to treat her right shoulder.

38. On July 23, 2014, García was giving a course at AUC.

39. On that day, while giving the course, García tripped over some cables and fell.

40. When she fell, García suffered injuries to several areas of her body, including her right shoulder, which worsened her impairment.

41. García filled out a written report regarding the fall and injuries and submitted it to AUC.

42. At that point, García considered reporting for treatment at the Puerto Rico State Insurance Fund Corporation ("SIFC").

43. However, the period from mid-July to mid-August is an extremely busy period at AUC, as the teachers are involved in giving final exams, handing in grades, the summer training, and preparation for the new academic year.

44. As a result, García did not immediately report to the SIFC.

45. In August 2014, Ms. Patricia Papín held a meeting at which all of the AUC professors were present.

46. The topic of the meeting was the new regulations regarding ensuring the placement of AUC students once they graduated in employment positions available in the job market.

47. During the meeting, several of the professors, including García, raised concerns regarding AUC's actions to meet this requirement.

48. For example, Professor Rosa Colón ("Colón") asked why AUC did not promote standards of employability by sponsoring student trips to important conventions.

49. Professor Sanabria ("Sanabria") complained that there was a lack of coordination among his groups.

50. Professor Guedes ("Guedes") criticized AUC by stating: "An institution is only as good as its professors."

51. García asked why the faculty was not allowed to attend a yearly seminar that the Museum of Puerto Rico was offering free of charge.

52. The seminar was regarding vocational art employment opportunities for young talented students.

53. Indeed, Carbonell responded, in front of all those present at the meeting, to the comment made by Colón by refuting it and stating that it was not true.

6

54. In spite of the above, after the above professors spoke out during the meeting regarding their concerns, the only professor who was subject to adverse actions by AUC was García.

55. Marrero and Carbonell barred García from attending an activity conducted by AUC's President, Teresa de Dios ("De Dios"), which is the most important activity of the summer training because, during the same, the professors are given the schedules for the next semester and the syllabi for their courses.

56. All of the professors, except García, were allowed to attend the activity where they received the schedules and syllabi.

57. Marrero and Carbonell claimed that the reason why they were barring García from attending the activity held by De Dios was because of the statement made by García during the meeting held by Ms. Patricia Papín.

58. However, AUC did not reprimand or punish in any way any of the other professors who spoke out during the meeting held by Ms. Patricia Papín.

59. AUC's decision to bar García from attending the meeting held by De Dios was part of its discrimination on account of García's disability and in retaliation for seeking a reasonable accommodation.

60. AUC barred García from attending the meeting held by De Dios as part of its efforts to continue discriminating against her on account of her disability and retaliating against her for seeking a reasonable accommodation.

61. On August 19, 2014, García was still feeling pain from the fall she had experienced while giving a class in AUC's premises.

62. As a result, García decided that she would report for treatment at the SIFC.

7

63. In order to do so, García went to the offices of AUC's Human Resources Director, Viviana Santiago ("Santiago"), and requested any necessary documents that were needed in order for her to report for treatment at the SIFC.

64. Santiago told García to wait a moment because she was going to "consult something" and left.

65. That same day, García was summoned to a meeting with Carbonell and Santiago.

66. During the meeting, Carbonell and Santiago informed García that she was being terminated from employment with AUC.

67. AUC's proffered reason for the termination was the statement made by García during the meeting with Ms. Patricia Papín.

68. Notwithstanding, AUC did not terminate any of the other professors who spoke out during the meeting.

69. Carbonell and Santiago handed García a letter signed by Carbonell in which she was notified of her termination.

70. AUC's proffered reason for García's termination was a pretext to discriminate against García on account of her disability.

71. The proffered reason was also a pretext to mask retaliation against García for engaging in protected conduct when she sought a reasonable accommodation, as well as when she informed AUC that she would be reporting for treatment at the SIFC.

72. On the day of her termination, AUC refused to provide García the documents which she requested and which were necessary to report to the SIFC.

73. AUC also barred García on that day from going to her classroom to pick up her belongings, which included her medical documents corresponding to her operation and medical visits.

74. The next day, August 20, 2014, García reported for treatment at the SIFC despite the fact that AUC did not provide her with the documentation, because she needed to receive treatment on her right shoulder and left knee.

75. At the SIFC, García was informed that AUC had a duty to fill out the documentation.

76. Pursuant to what she was told at the SIFC, on August 21, 2014, García went to AUC and met with Santiago again, and told her that she needed AUC to fill out the SIFC papers.

77. Again, Santiago said she had to consult something and left.

78. Thereafter, Santiago returned and informed García that AUC would not fill out the papers.

79. AUC's decision not to fill out the SIFC papers was as part of its pattern of discrimination and retaliation, even after García was terminated from employment.

80. As a result of AUC's discriminatory and retaliatory conduct, García has suffered severe emotional and economic damages, and her physical condition was substantially deteriorated by the delays caused by AUC.

81. AUC is liable for all of the damages caused to García as a result of the discriminatory and retaliatory conduct related herein.

## IV. FIRST CAUSE OF ACTION
### (Disability Discrimination under ADA and ADAAA)

82. García repeats and incorporates by reference each and every preceding allegation as if fully set herein.

83. García was discriminated against by AUC on the basis of her disability.

84. García has suffered severe economic, physical and emotional damages as a result of AUC's discrimination on account of her disability, and her physical condition was substantially deteriorated by the delays caused by AUC.

85. AUC's conduct constitutes a violation of the ADA and the ADAAA.

86. García is entitled to backpay, economic, physical, emotional and medical damages and continuous loss of income caused as a proximate result of AUC's discriminatory conduct, in violation of the ADA and the ADAAA.

87. As a result of AUC's discriminatory conduct, García is also entitled to injunctive relief in the form of reinstatement and/or front pay *in lieu* thereof and an order against AUC, its officers, agents and/or employees to cease and desist of any further discriminatory and retaliatory conduct against García.

## V. SECOND CAUSE OF ACTION
(Punitive Damages for Disability Discrimination)

88. García repeats and incorporates by reference each and every preceding allegation as if fully set herein.

89. AUC's discriminatory practices against García were malicious and/or carried out with reckless indifference towards García's federally protected rights.

90. AUC knew or should have known that its conduct towards García contravened the ADA and the ADAAA.

91. García is entitled to punitive damages.

## VI. THIRD CAUSE OF ACTION
(Disability Discrimination under Law No. 44 and 53)

92. García repeats and incorporates by reference each and every preceding allegation as if fully set herein.

93. AUC's conduct constitutes discrimination on the basis of disability under Puerto Rico Laws Nos. 44 and 53.

94. García has suffered severe economic, physical and emotional damages as a result of AUC's discrimination on account of her disability.

95. AUC is liable to García for double the backpay, economic, physical, emotional and medical damages and continuous loss of income caused as a proximate result of AUC's discriminatory conduct on the basis of disability.

## VII. FOURTH CAUSE OF ACTION
### (Retaliation under ADA, ADAAA and Law No. 44)

96. García repeats and incorporates by reference each and every preceding allegation as if fully set herein.

97. García engaged in protected conduct under ADA, ADAAA and Law No. 44, and as a result of the assertion of her rights to work with a reasonable accommodation, she suffered an adverse employment action in the form of discriminatory treatment and retaliatory discharge.

98. García has suffered severe economic, physical and emotional damages as a result of AUC's retaliation against her.

99. As a result of AUC's retaliatory conduct, García is entitled to the back pay to which she would have been entitled absent disability discrimination and retaliation as well as to an award of economic, physical emotional and medical damages and continuous loss of income caused as a proximate result of AUC's retaliatory conduct.

100. As a result of AUC's retaliatory conduct, García is also entitled to injunctive relief in the form of reinstatement and an order against AUC to cease and desist of any further retaliatory treatment against her and/or front pay *in lieu* of reinstatement.

## VIII. FIFTH CAUSE OF ACTION
### (Punitive damages for Retaliation Under ADA and ADAAA)

101. García repeats and incorporates by reference each and every preceding allegation as if fully set herein.

102. AUC's retaliatory practices against García were malicious and/or carried out with reckless indifference towards García's federally protected rights.

103. AUC knew or should have known that its conduct towards García contravened the federal and local anti-retaliation provisions.

104. García is entitled to punitive damages as a result of AUC's retaliatory conduct.

### IX. SIXTH CAUSE OF ACTION
### (Retaliation Under Law No. 115)

105. García repeats and incorporates by reference each and every preceding allegation as if fully set herein.

106. García engaged in "protected conduct" under Law No. 115.

107. As a result of engaging in protected conduct, AUC retaliated against García in violation of Law No. 115.

108. García has suffered severe emotional, physical and economic damages as a result of AUC's retaliation against her.

109. AUC is liable to García for double the backpay, economic, physical, emotional and medical damages and continuous loss of income caused as a proximate result of AUC's discriminatory conduct, together with an award of costs and attorneys' fees.

### X. SEVENTH CAUSE OF ACTION
### (Wrongful Discharge Under Law No. 80)

110. García repeats and incorporates by reference each and every preceding allegation as if fully set herein.

111. García was discharged without just cause by AUC, in violation of Law No. 80.

112. As a result of García's unjust discharge, she is entitled to indemnity under Law No. 80.

113. The amount of García's indemnity under Law No. 80 is $12,350.00, plus costs and statutory attorneys' fees.

## XI. DEMAND FOR JURY TRIAL

114. García hereby demands that all of her causes of action be tried before a jury.

**WHEREFORE**, all premises considered, García prays from this Honorable Court the following relief:

1. An order directing AUC, its officers, agents and/or employees to reinstate García to cease and desist of any further discriminatory and/or retaliatory conduct against her;

2. Lost benefits, both past and future;

3. An award of compensatory damages in an amount not less than $250,000.00;

4. Double compensatory, physical, emotional and economic damages under Laws Nos. 44, 53 and 115;

5. An award of punitive damages in an amount not less than $250,000.00;

6. Indemnity pursuant to Law No. 80 in the amount of $12,350.00, plus costs and attorneys' fees;

7. An award of statutory attorneys' fees, together with costs, litigation expenses and necessary disbursements under 42 U.S.C. §1988 and 42 U.S.C. §§12101;

8. Prejudgment interests; and

9. Any other relief which this court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 12th day of November, 2015.

**LAW OFFICE OF CARLOS VERGNE**
24 Mariana Bracetti St., 2nd Floor
San Juan, PR 00918
Tel. (787) 753-3799
Fax (787) 759-8429
e-mail: carlosvergne@aol.com

*s/Carlos M. Vergne Vargas*
CARLOS M. VERGNE
USDCPR No. 209611

**GONZÁLEZ MUÑOZ LAW OFFICES, PSC**
P.O. Box 9024055
San Juan, PR 00902-4055
Tel. (787) 766-5052
Fax (787) 766-5551
e-mail: info@gonzalezmunozlaw.com

*s/Juan Rafael González Muñoz*
JUAN RAFAEL GONZÁLEZ MUÑOZ
USDCPR No. 202312